UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BENNY BAIN,                         )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   No. 4:05CV541 TIA
                                    )
COPP TRUCKING CO., INC.,[1]         )
                                    )
        Defendant.                  )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Copp Trucking Co., Inc.'s Motion for Summary Judgment. (Docket #10). The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## Facts

In its Motion for Summary Judgment, Defendant has attached a Statement of Uncontroverted Material Facts. Plaintiff has failed to respond to the Defendant's motion. Under Local Rule 7-4.01, "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party."[2] Therefore, the Court sets forth the following facts as presented by the Defendant in this matter:

On July 25, 2001, Defendant hired Plaintiff as a truck driver. (Deft.'s Exh. A, Travis Greene Dec'l. at para. 4). Plaintiff's job responsibilities included driving a tractor trailer truck to and from

---

[1] Although Defendant points out to the Court in a number of pleadings that Plaintiff has improperly named Defendant in the Complaint as "Copp Trucking Co., Inc.," Defendant has never moved the Court to substitute its proper name.

[2] Inasmuch as Plaintiff completely failed to convert anything in the Defendant's statement of unconverted facts, he is deemed to have admitted every matter Defendant set forth in its statement. Local Rule 7-4.01.

Brandt Truckline in Bloomington, Illinois every night to deliver and retrieve freight. (Id. at para. 5). Plaintiff's shift lasted from 7:00 p.m. to 3:00 a.m., the time required for driving the round trip. (Id. at paras. 5-6). The drive is approximately three hours each way. (Id. at para. 5). Defendant terminated Plaintiff's employment on October 21, 2004, after several incidents caused Defendant to view Plaintiff as a threat to his own safety and the safety of others. (Id. at paras. 7-29; Deft.'s Exh. B, David Crutcher Dec'l at paras. 4-13).

Beginning in June, 2004, Plaintiff reported to Travis Greene, Defendant's general manager, that he was being followed while driving to and from Bloomington. (Greene Dec'l at paras. 8-10; Crutcher Dec'l at paras. 5-7; Deft.'s Exhs. C & D). On October 8, 2004, Plaintiff reported to Greene and David Crutcher, Defendant's President and owner, that a truck driver from another company had conspired with the police to cause an accident involving him, because there were people trying to kill him. (Greene Dec'l at paras. 11-12; Crutcher Dec'l at paras. 6-8; Deft.'s Exh. E). Greene and Crutcher decided to schedule a replacement driver for Plaintiff while determining how to address the situation. (Greene Dec'l at para. 13; Crutcher Dec'l at para. 9). On October 11, 2004, Plaintiff delivered to Greene's office logs from the prior weeks and asked whether the company was associated with the people following and trying to kill him. (Greene Dec'l at paras. 14-15). After assuring Plaintiff that Defendant was not involved, Plaintiff asked Greene how he would like it if he and some of his friends went out on I-55 and started killing "white folks." (Greene Dec'l at para. 16; Deft.'s Exh. F). Plaintiff stated that white people were trying to kill him. (Greene Dec'l. at para. 17). Plaintiff ended the conversation by saying, "They wouldn't like that much would they." (Greene Dec'l at para. 18; Deft.'s Exh. F).

Based on Plaintiff's statements to Greene on October 11, 2004, Greene and Crutcher

determined that they had no choice but to terminate Plaintiff for his own safety and the safety of others. (Greene Dec'l. at para. 19; Crutcher Dec'l at para. 12). On October 21, 2004, Greene and Crutcher met with Plaintiff and apprised him of their decision to terminate him for his own safety and the safety of the general public. (Greene Dec'l. at para. 20; Crutcher Dec'l. at para. 13). During the meeting, Plaintiff expressed his concern that someone was trying to kill him and indicated that he was not sure when he would feel safe returning to work. (Greene Dec'l. at para. 20; Crutcher Dec'l. at para. 13).

On or about December 3, 2004, Plaintiff completed a Charge Questionnaire with the Equal Employment Opportunity Commission ("EEOC"). (Deft.'s Exhs. G and H). Plaintiff failed to answer the questions asking him to describe what happened to him that he believed to be discriminatory and to identify the most recent date of harm. (Deft.'s Exh. H-11). The only date Plaintiff included in the EEOC Questionnaire was in the typed notes he submitted. (Deft.'s Exh. H-20). In particular, Plaintiff alleges that in November, 2003, a worker at Brandt Truckline referred to him as "a dumb nigger." (Deft.'s Exh. H-20). Plaintiff indicated that he believed the alleged discriminatory acts were taken against him because of his race, color, and religion, but that he did not know of anyone who was treated more favorably than him in a similar situation. (Deft.'s Exh. H-11 - H-12). Plaintiff did not check the boxes marked for sex, national origin, or religion in the portion of the EEOC Charge Questionnaire. (Deft.'s Exh. G). Likewise, plaintiff failed to provide any information supporting his claim of failure to promote other than the fact that Defendant hired him as a truck driver in August, 2001. (Deft.'s Exh. G). In the four-handwritten pages of notes attached to the Charge Questionnaire, Plaintiff made blanket allegations of racial discrimination, sexual harassment and discrimination, and religious discrimination. (Deft.'s Exh. H-17 - H-20).

After interviewing Plaintiff regarding his charge, Doreen Hodges, an EEOC Investigator, made the following entry in the Note Detail on January 6, 2005:

> Spoke to pcp. He stated that the derogatory comments were made in Nov. 2003 (untimely). He stated that he was terminated because his boss felt he was not stable enough to drive a truck after pcp accused several people of trying to murder him. Pcp insisted on filing.

(Deft.'s Exh. H-34). On January 7, 2005, Investigator Hodges dismissed Plaintiff's charge. (Deft.'s Exh. H-3 -H-4). The EEOC issued a no cause finding and a notice of right to sue on January 11, 2005. (Deft.'s Exh. H-5-H-6).

On April 5, 2005, Plaintiff filed the instant Complaint. (Docket #1). On June 22, 2005, Defendant filed a Motion for Summary Judgment. (Docket #10). On August 3, 2005, the Court entered a show cause order directing Plaintiff to respond in writing no later than September 6, 2005, why Defendant's Motion for Summary Judgment should not be granted and apprising Plaintiff that failure to timely comply with the Order may result in the case being dismissed without prejudice. On September 6, 2005, Plaintiff filed a Motion for Continuance requesting additional time to file a responsive pleading. (Docket #12). The Court granted Plaintiff's motion and in an Order dated September 7, 2005, directed Plaintiff to show cause in writing no later than October 11, 2005, why Defendant's Motion for Summary Judgment should not be granted and apprised Plaintiff that failure to timely comply with the Order may result in the case being dismissed without prejudice. A review of the Court file shows that, to date, Plaintiff has not filed any opposition to the motion, complied with the show cause order, or requested additional time to comply with the Order of September 7, 2005.

**Standard for Ruling on Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The United States Supreme Court has noted that, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action'." Celotex, 477 U.S. at 327 (1986) (quoting Fed. R. Civ. P. 1).

The initial burden of proof is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

**Discussion**

Defendant first argues that Plaintiff failed to exhaust his administrative remedies. The undersigned agrees with Defendant and finds that summary judgment is appropriate.

"Exhaustion requires a claimant to give notice of all claims of discrimination in the administrative complaint, but administrative complaints are interpreted liberally." Price v. Harrah's Maryland Heights Operating Co., 117 F Supp. 2d 919. 921 (E.D. Mo. 2000). The reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate the allegations of discrimination and to work with the parties toward voluntary compliance and conciliation. See, e.g., Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996) (discussing exhaustion requirement under Title VII). Administrative remedies are exhausted by the timely filing of an EEOC charge and the receipt of a right-to-sue letter. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994)."The proper exhaustion of administrative remedies gives the plaintiff a green light to bring [his or] her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court." Shannon, 72 F.3d at 684. Although the undersigned must liberally construe an administrative charge for exhaustion of remedies purposes, distinction is made between reading a claim which lacks specificity and inventing a claim which simply was not included in the charge. Id. The claims of employment discrimination included in the complaint may be as broad as the scope of

the EEOC charge. See, e.g., Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000). Thus, allegations outside the scope of the EEOC charge are not allowed inasmuch as they circumscribe the EEOC's investigatory and conciliatory role. Williams, 21 F.3d at 223 ("A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of the charges timely brought before the EEOC.").

In the instant Complaint, Plaintiff alleges that Defendant violated Title VII by failing to promote him and by terminating his employment based on his race, religion, sex, and national origin. Defendant notes that the EEOC charge, in this case the Charge Questionnaire, is devoid of any allegations of national origin discrimination, a failure to promote, sex discrimination, or harassment. Thus, Plaintiff's claims of national origin discrimination, failure to promote, sex discrimination, and harassment in his Complaint are beyond the scope of his administrative charge. Accordingly, Plaintiff has failed to exhaust his administrative remedies with respect to his national origin, failure to promote, sex discrimination, or harassment claims, and Defendant is entitled to judgment on all of these claims.

Next, Defendant contends that all of the claims set forth in Plaintiff's Complaint are time-barred. To exhaust administrative remedies, an individual must timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge. 42 U.S.C. § 2000e-5(b), (c),(e). To be timely, a charge of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. §2000e-5(e)(1)(Title VII charge shall be filed with the EEOC within 300 days after alleged unlawful employment practice). In the Charge Questionnaire completed on December 3, 2004, Plaintiff did not answer the question that asked him to identify the alleged

discriminatory act nor did he answer the question that asked him the most recent date of harm. A review of the record shows that Plaintiff filed his charge of discrimination at least 360 days after the alleged discriminatory statements made in November 2003, thereby missing the 300-day deadline. The record is devoid of any evidence showing any discriminatory conduct taking place in the 300 days preceding December 3, 2004, the date Plaintiff completed the EEOC Charge Questionnaire. Inasmuch as Plaintiff waited over 300 days to file his charge of discrimination, his claims are untimely. Accordingly, Defendant is entitled to summary judgment on all the claims set forth in his complaint.

**IT IS HEREBY ORDERED** that Defendant Copp Trucking Co., Inc.'s Motion for Summary Judgment (filed June 22, 2005/Docket #10) is granted.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this  3rd  day of January, 2006.

                                                    /s/ Terry I. Adelman
                                                    UNITED STATES MAGISTRATE JUDGE